UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


ROBERT HAGGINS, ET AL.,       )
Plaintiffs                    )
                              )
              v.              )   C.A. No. 09-cv-30111-MAP
                              )
VERIZON NEW ENGLAND, INC.,    )
Defendant                     )


MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
PLAINTIFFS' MOTION TO REMAND TO STATE COURT
(Dkt. Nos. 16 and 23)

September 9, 2010

PONSOR, D.J.

I. INTRODUCTION

Plaintiffs, employees of Defendant, Verizon New England, Inc., filed a three-count complaint in Hampden County Superior Court, alleging breach of contract with respect to third-party beneficiaries and violations of Plaintiffs' privacy rights. (Dkt. No. 1, Notice of Removal by Defendant, Ex. 1, Compl.)

Defendant removed the case to this court and now moves for summary judgment on the ground that Plaintiffs' claims

(1) are preempted under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) (the "LMRA"), and under the National Labor Relations Act (the "NLRA" or the "Act") pursuant to San Diego Building Trades v. Garmon and its progeny, 359 U.S. 236 (1959), and (2) fail as a matter of law.  (Dkt. No. 16.)  Plaintiffs have responded by moving for a remand to state court for lack of subject matter jurisdiction.  (Dkt. No. 23.)

For the reasons discussed below, Defendant's motion will be allowed and Plaintiffs' motion will be denied.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, unionized employees of Defendant Verizon New England, Inc., are members of the International Brotherhood of Electrical Workers (the "IBEW").  They seek to challenge Defendant's new employment policy requiring them to carry cell phones with GPS capability and tracking software while on the job.  The tracking software enables Defendant to monitor the whereabouts of its employees, who install telephone equipment and therefore spend much of their work time at remote sites.  Verizon Wireless provides the cell-phone service, and the contract between Defendant

and Verizon Wireless requires "authorized consent from all users and affected persons."  (Dkt. No. 18, Aff. of Joseph J. Santos ¶ 15.)

The terms and conditions of Plaintiffs' employment are governed by a collective bargaining agreement ("CBA") between Plaintiffs and Defendant.  The CBA contains a Management Rights Clause, which provides as follows:

> The Company retains the exclusive right to manage its business including (but not limited to) the right to determine the methods and means by which its operations are to be carried on, to assign and direct the work force and to conduct its operations in a safe and effective manner.

(Dkt. No. 18, Santos Aff., Ex. A, CBA section G11.)  The CBA also contains grievance and arbitration provisions, which provide as follows:

> [A] complaint involving the interpretation or application of any of the provisions of this Agreement or a complaint that an employee or group of employees for whom the IBEW is the bargaining agent has, in any manner, been unfairly treated may be submitted to the grievance procedure.

(Dkt. No. 18, Santos Aff., Ex. A, CBA section G8.01.)

In January 2009, the IBEW filed an unfair labor practice charge ("ULP") with the National Labor Relations Board (the "NLRB" or the "Board").  The ULP alleged that the

requirement to carry tracking software constituted a change in working conditions and that Defendant was required to bargain over the change before imposing it.  The NLRB deferred the charge for arbitration because the issue required interpretation of the CBA under the applicable grievance-arbitration procedures.

Plaintiffs filed this lawsuit in state court immediately after the NLRB deferred the charge.  As noted, Defendant removed to federal court pursuant to 28 U.S.C. § 1441(b), invoking Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("Section 301"), and moved for summary judgment.  Plaintiffs opposed and moved to remand.

### III. DISCUSSION

In Counts II and III of the state-court complaint, Plaintiffs have alleged that the new cell-phone policy violates privacy rights granted in Mass. Gen. Laws ch. 214, § 1B and Article 14 of the Massachusetts Declaration of Rights.[1]  In Count 1, Plaintiffs have sought damages as

---

[1] Neither party distinguishes the two privacy claims for purposes of the summary judgment motion.  The court will likewise treat them identically, applying arguments put

third-party beneficiaries of Defendant's contract with its cell-phone carrier.

Defendant has moved for summary judgment with respect to all counts on the theory that (1) Plaintiffs' claims consist entirely of alleged violations of the CBA, which claims are reserved for arbitration, and (2) Plaintiffs' claims are preempted under the NLRA pursuant to <u>Garmon</u>. Defendant has also moved for summary judgment with respect to the contract claim (Count 1) on the additional theory that Plaintiffs are <u>not</u> third-party beneficiaries.

Plaintiffs oppose the motion for summary judgment and move to remand back to state court for lack of federal jurisdiction. Plaintiffs also seek an award of fees and costs associated with litigating the removal to this court.

A.  <u>Plaintiffs' Motion to Remand (Dkt. No. 23)</u>.

Defendant argues that Plaintiffs' claims are preempted under Section 301 and removal to this court was therefore proper. Plaintiff argues that no claim is preempted and this court therefore lacks jurisdiction.

---

forward in the statutory context to the state constitutional context.

Section 301 is a jurisdictional statute permitting federal district courts to hear suits "for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). Based on this statute, federal law preempts state law that would otherwise govern. <u>Local 174, Teamsters of America v. Lucas Flour Co.</u>, 369 U.S. 95 (1962).

If any one of Plaintiffs' claims is preempted, then removal to this court is proper, and the court is tasked with adjudicating the complaint. If none of Plaintiffs' claims are preempted, then this court lacks subject matter jurisdiction, and the entire proceeding must be remanded to state court.

A complaint need not specifically allege a violation of the labor contract to be preempted by Section 301. If the resolution of the dispute is "substantially dependent upon analysis of the terms of [a collective bargaining agreement]," then the dispute is treated as a dispute regarding the CBA and is preempted. <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 220 (1985). For the resolution of a claim to be "substantially dependant" on a CBA, the interpretation of the CBA must be necessary to resolve the

claim.  Lingle v. Norge Division of Magic Chef, 486 U.S. 399, 410 (1988).  Thus, the issue here is whether resolution of Plaintiffs' claims requires interpretation of the CBA -- specifically, the management rights clause permitting Defendant to direct the "methods and means by which its operations are to be carried on."  (Dkt. No. 18, Santos Aff., Ex. A, CBA section G11.)

It is well established that a broad management rights clause may preempt claims based on allegedly tortious conduct.  See O'Donnell v. Boggs, 09-1659, 2010 U.S. App. LEXIS 13921 at *13 (1st Cir. July 8, 2010).  Indeed, the First Circuit has specifically held that a management rights clause in a CBA is sufficient to preempt a privacy claim very similar to the one asserted here.  Jackson v. Liquid Carbonic Corp. 863 F.2d 111, 119 (1st Cir. 1988).  In Jackson, the First Circuit noted that Massachusetts courts interpret Mass. Gen. Laws ch. 214, § 1B to require balancing the employer's business interest in favor of disclosure against "the substantiality of the intrusion" resulting from such disclosure.  Bratt v. Int'l Business Machines Corp., 467 N.E.2d 126, 135-36 (Mass. 1984).  The First Circuit

concluded that such balancing necessarily required interpretation of an applicable CBA.

Plaintiffs suggest that <u>Jackson</u> should not govern because it was effectively abrogated by <u>Livadas v. Bradshaw</u>, 512 U.S. 107 (1994). <u>Livadas</u> required that any purported waiver of otherwise applicable state-law rights had to be "clear and unmistakable." 512 U.S. at 125. The plaintiffs' rights in <u>Livadas</u> were anchored on a specific statutory entitlement, so the decision's application to <u>Jackson</u> is doubtful. At any rate, the disposition of this motion does not require extended analysis of <u>Livadas</u>'s possible impact. The issue before the court is not the clarity of a purported waiver but the proper scope of the underlying right. Before reaching any waiver issue, the court must determine whether a privacy right exists at all. It is this threshold determination that manifestly requires interpretation of the CBA.

To determine the scope of a employee's right to privacy, the court must weigh the employer's interest against "the substantiality of the [resulting] intrusion" into the employee's privacy. <u>Bratt</u>, 467 N.E.2d at 135-36.

In this case, the scope of Plaintiffs' interest is defined most directly in the CBA.  Defendant asserts that the CBA gave it the right to require employees to carry tracking software on their persons.  Plaintiffs assert the contrary.  If Defendant is correct, then Plaintiffs had no right to be free of tracking software during work.  If Plaintiffs are correct, then the scope of their right to be free of tracking software during work is curtailed solely by state law.

The resolution of this dispute obviously requires interpretation of the CBA's management rights clause.  Because interpretation of the CBA is necessary, the privacy claims are preempted under Section 301.  Under these circumstances, federal subject matter jurisdiction exists and removal to this court was proper.  Plaintiffs' motion to remand to state court will therefore be denied.

B.   <u>Plaintiffs' Request for Fees and Costs</u>.

Plaintiffs request fees and costs associated with litigating their Motion to Remand.  Courts may award fees and costs pursuant to 28 U.S.C. § 1447(c) if the removing party lacked an "objectively reasonable" basis for seeing

removal.  Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).  Having found that removal was proper, the court will not awards costs or fees.

C.   Defendant's Motion for Summary Judgment (Dkt. No. 16).

Having made a threshold finding of jurisdiction, the court now turns to Defendant's Motion for Summary Judgment. Defendant argues that the entire claim should be dismissed because Plaintiffs failed to exhaust the CBA's mandated grievance procedures.  Defendant also argues that the contract count should be dismissed because Plaintiffs are not third-party beneficiaries.

The court will grant Defendant's motion and enter judgment for Defendant on Counts 2 and 3 for failure to exhaust grievance procedures and on Count 1 because Plaintiffs are not third-party beneficiaries of the wireless contract.

   1.   The Privacy Claims (Counts 2 and 3).

With respect to the privacy claims (Counts 2 and 3), the undisputed facts of record make it abundantly clear that Plaintiffs have not exhausted the CBA's mandated grievance

procedures.[2]  A claim preempted under Section 301 is adjudicated as a violation of the CBA, and a federal court may adjudicate an alleged violation of a CBA only if the grievance procedures specified in the CBA have been exhausted.  See Republic Steel Corp. v. Maddox, 379 U.S. 650, 652 (U.S. 1965).  Summary judgment will therefore enter for Defendant on the privacy claims.[3]

  2.  The Contract Claim (Count 1).[4]

In general, a plaintiff suing on a third-party beneficiary theory must show that the contracting parties

---

[2] Because Section 301 preemption drives the ruling here, it is not necessary to address Defendant's claim of Garmon preemption.

[3] The IBEW brought a related ULP that raises the issue whether the CBA gives Defendant the right to require Plaintiffs to carry tracking software on their persons.  As noted, the ULP has been referred for arbitration.  If Plaintiffs prevail, they may be able to bring invasion of privacy claims at that time.  See Martin v. Shaw's Supermarkets, Inc., 105 F.3d 40, 44 (1st Cir. 1997) (suggesting that, once there is a "definitive ruling" on the CBA's meaning, Section 301 does not permanently bar union plaintiffs from enforcing otherwise applicable rights).

[4] It is possible that the contract claim would itself be subject to the mandatory grievance process and that Defendant would be entitled to judgment on that basis alone.  In any event, as this analysis reveals, Defendants are entitled to judgment substantively.  Plaintiffs simply are not intended third-party beneficiaries.

intended to give the third party the benefit of promised performance.  <u>Anderson v. Fox Hill Village Homeowners Corp.</u>, 676 N.E.2d 821, 822 (Mass. 1997) (citing <u>Spinner v. Nutt</u>, 631 N.E.2d 542, 546 (Mass. 1994)).  It is not enough that an individual will benefit incidentally from the promised performance; the benefit must have been intended by the contracting parties.

For evidence of the parties' intentions, courts look to the "language and circumstances" of the contract at the time of its negotiation, drafting and execution.  <u>See</u> <u>Anderson</u>, 676 N.E.2d at 822 (citing <u>Choate, Hall & Stewart v. SCA Services, Inc.</u>, 392 N.E.2d 1045, 1051 (Mass. 1979) ("We search for indicia of intention against the background of the transaction.")).

As evidence that the parties to the wireless contract did not intend Plaintiffs to benefit from promised performance, Defendant has submitted an affidavit to the effect that it did not so intend. (Dkt. No. 18, Ex. 1, Santos Aff. ¶ 16.)  Defendant has also submitted a letter from the wireless carrier stating that the wireless carrier did not intend to make Plaintiffs the beneficiaries of the

contract.  (Dkt. No. 18, Ex. E, Letter to from Verizon Wireless, April 23, 2009.)

Plaintiffs' only evidence to the contrary is the language in the contract itself, which all parties agree requires consent from authorized users.  Even viewed in the light most favorable to the non-moving party, this consent requirement is not evidence that third-party beneficiary status was intended.  Plaintiffs may be beneficiaries of the contract, but the evidence currently before this court suggests that they are incidental beneficiaries, not intended beneficiaries.

Because Plaintiffs have produced no evidence of the intent of the contracting parties, Defendant's motion for summary judgment will be allowed with respect to the contract claim (Count 1).

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Dkt. No. 16) is hereby ALLOWED and Plaintiffs' Motion to Remand to State Court (Dkt. No. 23) is hereby DENIED.  The clerk will enter judgment for Defendant, and the case may be closed.

**It is So Ordered.**

                                              **/s/ Michael A. Ponsor**
                                              **MICHAEL A. PONSOR**
                                              **U.S. District Judge**